JEROME W. MACLAUGHLIN
Senior Counsel
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, DC 20044-7611
(202) 616-7162

ALLAN B. K. URGENT
Assistant United States Attorney
District of New Jersey
United States Attorney's Office
970 Broad Street, 7th Floor
Newark, NJ 07102
(973) 297-2079

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> APOGENT TRANSITION CORP., BEAZER EAST, INC., COOPER INDUSTRIES, LLC, and OCCIDENTAL CHEMICAL CORPORATION, <br><br> Defendants. | Civil Action No. 2:19-cv-8654 <br><br> **COMPLAINT** |

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorney, acting at the request of the Regional Counsel of the United States Environmental Protection Agency ("EPA") for Region II, files this complaint and alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action brought against Apogent Transition Corp., Beazer East, Inc.,

Cooper Industries, LLC, and Occidental Chemical Corporation under Sections 106, 107, and 113

of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as

amended ("CERCLA"), 42 U.S.C §§ 9606, 9607, and 9613. In this action, the United States

seeks (a) recovery of unreimbursed costs incurred by the United States through April 30, 2017,

in response to releases and threatened releases of hazardous substances into the environment at

or from the Standard Chlorine Chemical Co. Inc. Superfund Site in the Town of Kearny, Hudson

County, New Jersey ("Site"); and (b) performance of the response actions selected by EPA in the

September 30, 2016 Record of Decision for the Site in a manner consistent with the National

Contingency Plan ("NCP"), 40 C.F.R. Part 300.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action and over the

parties under 28 U.S.C. §§ 1331 and 1345 and Sections 106, 107, and 113(b) of CERCLA, 42

U.S.C. §§ 9606, 9607, and 9613(b).

3.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and Section

113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases or threatened releases of

hazardous substances that gave rise to these claims occurred in this district, and because the Site

is located in this district.

## DEFENDANTS

4.     Apogent Transition Corp. ("Apogent") is a Delaware corporation and its principal

place of business is in Waltham, Massachusetts.

5.     Apogent is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

6.     Apogent is the corporate successor-by-merger to Tanatex Chemical Corporation ("Tanatex").

7.     At relevant times, Tanatex conducted operations relating to the production of specialty chemicals, including dye-carriers, at the Site.

8.     Beazer East, Inc. ("Beazer") is a Delaware corporation and its principal place of business is in Pittsburgh, Pennsylvania.

9.     Beazer is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

10.    At relevant times, Beazer, then known as The Koppers Company, Inc., conducted operations relating to naphthalene refining and product formation at the Site and owned property within the Site, including the areas where naphthalene refining and product formation occurred.

11.    Cooper Industries, LLC ("Cooper") is a Delaware corporation and its principal place of business is in Houston, Texas.

12.    Cooper is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

13.    Cooper is the corporate successor-by-merger to Thomas A. Edison, Inc. ("Edison") and Emark Battery Corporation ("Emark").

14.    At relevant times, Edison and Emark conducted operations relating to lead-acid battery manufacturing at the Site and owned property within the Site, including the areas where lead-acid battery manufacturing occurred.

15.     Occidental Chemical Corporation ("Occidental") is a New York corporation and its principal place of business is in Dallas, Texas.

16.     Occidental is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

17.     Occidental is the corporate successor-by-merger to Diamond Shamrock Chemical Company ("Diamond Shamrock").

18.     At relevant times, Diamond Shamrock arranged for the transportation and disposal of chromite ore processing residue at the Site.

### SITE DESCRIPTION

19.     The Site is approximately 42 acres and is located at 1025-1035 Belleville Turnpike in the Town of Kearny, Hudson County, New Jersey. It is identified on the current tax map of the Town of Kearny, New Jersey, as Block 287, Lots 32.01, 48, 49, 50, 51, and 52; and Block 287, Lots 54, 55, and 56. The Site also includes 3.8 acres of the Belleville Turnpike, Newark Turnpike, and associated rights-of-way and steep embankments.

20.     The Site is in an industrial/commercial area and was used for industrial/ commercial operations from the early 1900s through the early 1990s, including naphthalene refinement and product formation, lead-acid battery manufacturing, dye-carrier production, and distillation/purification of various chlorinated benzenes.

21.     Buildings, production areas, ditches, and wastewater lagoons were constructed to support historical industrial/commercial operations at the Site. Surface water runoff was channeled into the ditches and lagoons, which eventually drained into the Hackensack River.

22.     The Site borders, but does not include, the Hackensack River.

## STATUTORY BACKGROUND

23.      CERCLA was enacted in 1980 to provide a comprehensive governmental

mechanism for abating releases and threatened releases of hazardous substances and other

pollutants and contaminants, and for funding the costs of such abatement and related

enforcement activities, which are known as "response" actions under Sections 101(25) and

104(a) of CERCLA, 42 U.S.C. §§ 9601(25) and 9604(a).

24.      Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1), provides in pertinent part:

> Whenever (A) any hazardous substance is released or there is a
> substantial threat of such a release into the environment, or
> (B) there is a release or substantial threat of release into the
> environment of any pollutant or contaminant which may present an
> imminent and substantial danger to the public health or welfare,
> the President is authorized to act, consistent with the national
> contingency plan, to remove or arrange for the removal of, and
> provide for remedial action relating to such hazardous substance,
> pollutant, or contaminant at any time (including its removal from
> any contaminated natural resource), or take any other response
> measure consistent with the national contingency plan which the
> President deems necessary to protect the public health or welfare
> or the environment. . . .

25.      Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides in pertinent part:

> [W]hen the President determines that there may be an imminent
> and substantial endangerment to the public health or welfare or the
> environment because of an actual or threatened release of a
> hazardous substance from a facility, he may require the Attorney
> General of the United States to secure such relief as may be
> necessary to abate such danger or threat. . . . The President may
> also . . . take other action under this section including, but not
> limited to, issuing such orders as may be necessary to protect
> public health and the environment.

26.      Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

> Notwithstanding any other provision or rule of law, and subject
> only to the defenses set forth in subsection (b) of this Section –

     (2)     any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, [and]

     (3)     any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances,

*   *   *

shall be liable for –

     (A)     all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the National Contingency Plan . . . .

27.     Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides in pertinent part:

In any such action [for the recovery of costs referred to in Section 9607], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

## GENERAL ALLEGATIONS

Beazer East, Inc.

28.     In or around 1916, the White Tar Company ("White Tar") acquired Block 287, Lots 48 and 49, and began refining crude coal-tar naphthalene thereon to produce moth preventatives and other naphthalene products. In or around 1929, American Tar Products, Inc. ("American Tar") acquired White Tar's stock. In or around 1934, Koppers Gas & Coke Company acquired the stock of American Tar. American Tar then changed its name to Koppers Products Company. In or around 1935, Koppers Products Company transferred its assets, including White Tar's stock, to Koppers Gas & Coke Company. In or around 1936, Koppers Gas & Coke Company changed its name to The Koppers Company. In or around 1942, White Tar

6

liquidated and transferred its assets, including Block 287, Lots 48 and 49, and the production facilities thereon, to The Koppers Company.

29.     In or around 1944, The Koppers Company (f/k/a Koppers Gas & Coke Company) merged with and into The Koppers Company, Inc. ("Koppers"). In or around 1946, Koppers acquired Block 287, Lots 51 and 52, from Edison. Koppers continued naphthalene refining and product formation at the Site throughout this time until 1962, when Koppers sold Block 287, Lots 48, 49, 51, and 52, to an unaffiliated entity.

30.     In or around 1988, BNS Acquisitions, Inc., acquired the common stock of Koppers. In or around 1989, BNS Acquisitions, Inc. merged into Koppers, with Koppers as the surviving entity. Koppers then changed its name to Beazer Materials and Services, Inc. In or around 1990, Beazer Materials and Services, Inc. changed its name to Beazer East, Inc.

31.     During Beazer's ownership and operation at the Site from 1944 until 1962, the naphthalene facility produced up to 11,000 tons of refined naphthalene annually, as well as naphthalene in various other forms, including moth balls, blocks, and cakes. The facility also produced creosote disinfectants.

32.     Beazer used substances at the Site that are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including, but not limited to, naphthalene and polycyclic aromatic hydrocarbons, and disposed of wastes containing such hazardous substances at the Site.

33.     Contamination with hazardous substances, including, but not limited to, naphthalene and polycyclic aromatic hydrocarbons, has been found at the Site in surface and subsurface soils, groundwater, and surface water, and as a constituent of the dense non-aqueous phase liquid ("DNAPL") impacting groundwater at the Site.

Cooper Industries, LLC

34.     At some time between 1917 and 1918, Edison acquired Block 287, Lots 50, 51, and 52. From approximately 1929 until approximately 1933, Edison's wholly-owned subsidiary, Emark, owned and operated a lead-acid battery production facility on Block 287, Lot 50. In 1933, Emark merged into Edison. Edison continued lead-acid battery manufacturing operations on Block 287, Lot 50, until approximately 1953, at which time Edison sold Block 287, Lot 50, to an unaffiliated entity.

35.     In or around 1957, Edison merged with McGraw Electric Company to form McGraw-Edison, Inc. ("McGraw-Edison"). In or around 1985, Cooper Industries, Inc. acquired McGraw-Edison. In or around 2004, McGraw-Edison merged with Cooper Industries, Inc. Cooper Industries, Inc. then changed its name to Cooper Industries, LLC.

36.     During Edison and Emark's ownership and operation at the Site from 1929 until 1953, the lead-acid battery facility produced lead oxide sludge as a byproduct. Lead oxide sludge was stored at the Site in piles.

37.     Edison and Emark used substances at the Site that are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including, but not limited to, lead and other metals, and disposed of wastes containing such hazardous substances at the Site.

38.     Contamination with hazardous substances, including, but not limited to, lead and other metals, has been found at the Site in surface and subsurface soils, groundwater, and surface water.

## Apogent Transition Corp.

39.     In or around the mid-1950s until in or around 1963, Tanatex leased space in two buildings located on Block 287, Lot 50, for specialty chemical manufacturing and research operations.

40.     In or around 1970, Tanatex merged into Sybron Corporation. In or around 1986, Sybron Corporation merged into S.C. Acquisition Corp., with Sybron Corporation as the surviving entity. S.C. Acquisition was a subsidiary of Forstmann Little & Co. Following the merger in or around 1986, Sybron Corporation liquidated and redistributed its assets to other subsidiaries of Forstmann Little & Co.

41.     The assets and liabilities relating to discontinued operations, including Tanatex's specialty chemical manufacturing operations, were transferred to S.C. Acquisition Corp. No. 15. S.C. Acquisition Corp. No. 15 changed its name to Sybron Transition Corp. In or around 2002, Sybron Transition Corp. changed its name to Apogent Transition Corp.

42.     During Tanatex's operations at the Site from the mid-1950s until in or around 1963, the production facility manufactured specialty chemicals, including dye carriers, for the textile, paper, and leather manufacturing industries.

43.     Tanatex used substances at the Site that are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including, but not limited to, chlorinated benzenes, phenols, and biphenyls, and disposed of wastes containing such hazardous substances at the Site.

44.     Contamination with hazardous substances, including, but not limited to, chlorinated benzenes, phenols, and biphenyls, has been found at the Site in surface and

subsurface soils, groundwater, and surface water, and as a constituent of the DNAPL impacting groundwater at the Site.

<u>Occidental Chemical Corporation</u>

45.     From in or around 1916 until in or around 1949, The Martin Dennis Company operated a sodium bichromate production facility on the land immediately adjacent to the Site. In or around 1949, The Diamond Alkali Company acquired the stock and assets of The Martin Dennis Company, including the sodium bichromate production facility and the land immediately adjacent to the Site. In or around 1967, The Diamond Alkali Company changed its name to Diamond Shamrock Corporation. In or around 1983, Diamond Shamrock Corporation changed its name to Diamond Chemicals Company and then to Diamond Shamrock Chemicals Company.

46.     Following the name change, in or around 1983, New Diamond Corporation acquired Diamond Shamrock's stock. New Diamond Corporation then changed its name to Diamond Shamrock Corporation. Diamond Shamrock Corporation then changed its name to Maxus Energy Corporation ("Maxus"). In or around 1986, Maxus sold Diamond Shamrock's stock to Oxy-Diamond Alkali Corporation, at about which time Diamond Shamrock changed its name to Occidental Electrochemicals Corporation. In or around 1987, Occidental Electrochemicals Corporation merged into Occidental.

47.     Diamond Shamrock owned and operated the sodium bichromate production facility from 1949 until sometime in the 1970s, when manufacturing operations at the facility ceased. During Diamond Shamrock's ownership and operation of the facility, the production of sodium bichromate generated chromite ore processing residue ("COPR"). COPR contains chromium and hexavalent chromium.

10

48.    Diamond Shamrock arranged for the transport of hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including, but not limited to, chromium and hexavalent chromium, from the Diamond Shamrock sodium bichromate production facility for disposal at the Site.

49.    Contamination with hazardous substances, including, but not limited to, chromium and hexavalent chromium, has been found at the Site in surface and subsurface soils, groundwater, and surface water.

Response Action History

50.    In December 2001, the New Jersey Department of Environmental Protection ("NJDEP") referred the Site to EPA for proposed inclusion on the National Priorities List ("NPL"). EPA proposed adding the Site to the NPL by publication in the Federal Register on April 30, 2003, 68 Fed. Reg. 23,094.

51.    Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the NPL, 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 19, 2007, 72 Fed. Reg. 53,463.

52.    In or around 2010 or 2011, an interim response action was implemented at the Site and adjacent property under NJDEP oversight that included installation of a fully enclosed perimeter barrier wall system and hydraulic control groundwater extraction and treatment systems; excavation of nearshore sediments from the Hackensack River; and placement of the sediments together with barrier wall construction materials beneath a consolidated cap at the Site. EPA approved implementation of these interim response actions pursuant to a 2009 Engineering Evaluation/Cost Analysis.

53.     On May 3, 2013, EPA and Apogent, Beazer, Cooper, and Occidental entered into an Administrative Settlement Agreement and Order on Consent ("AOC") to conduct a remedial investigation and focused feasibility study for the Site (U.S. EPA Region II CERCLA Docket No. 02-2013-2015), pursuant to 40 C.F.R. § 300.430.

54.     Defendants completed a remedial investigation report on October 9, 2015 and completed a focused feasibility study report on July 26, 2016.

55.     Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of completion of the focused feasibility study and of the proposed plan for remedial action on July 27, 2016, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.

56.     EPA selected a remedy to be implemented at the Site in a Record of Decision ("ROD") executed on September 30, 2016. The ROD includes a responsiveness summary to public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

57.     The selected remedy includes: (a) remedy components already in place as a result of early actions at the Site, including the fully enclosed perimeter barrier wall system and hydraulic control groundwater extraction and treatment systems, existing surface covers, and stormwater management facilities; (b) placement of a targeted cap/cover in specific locations that are not already capped/covered, including stone and vegetative cover areas and wetlands areas, and repair of the existing covers as necessary, as well as stormwater management enhancements and wetland restoration; (c) DNAPL recovery; (d) institutional controls; (e) demolition of existing buildings; and (f) continued operation, maintenance, and monitoring of remedial components, including the fully enclosed perimeter barrier wall system and hydraulic control

groundwater extraction and treatment systems, existing surface covers, and stormwater management facilities.

### FIRST CLAIM FOR RELIEF

Cost Recovery under Sections 107(a) and 113(g)(2) of CERCLA

58.     Paragraphs 1 through 57 are re-alleged and incorporated herein by reference.

59.     The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), which defines a "facility" in pertinent part as "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located . . . ."

60.     There have been "releases", within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and threatened releases, of "hazardous substances," within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), into the environment at or from the Site.

61.     In undertaking response actions to address the release or threatened release of hazardous substances at the Site, the United States has incurred and will continue to incur "response costs," as defined in Section 101(25) and 107 of CERCLA, 42 U.S.C. §§ 9601(25) and 9607, with respect to "removal" or "remedial" actions, as defined in Sections 101(23) and (24) of CERCLA, 42 U.S.C. §§ 9601(23) and (24).

62.     The United States has incurred at least $671,479.94 through April 30, 2017, in unreimbursed response costs relating to the Site.

63.     The response costs incurred by the United States relating to the Site were incurred in a manner not inconsistent with the NCP.

64.     Apogent is the corporate successor-by-merger to a former operator of the Site at the time of disposal of hazardous substances at the Site, from which there has been a release or threatened release of hazardous substances.

65.     Apogent is liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as a person who owned or operated a facility at a time of disposal of hazardous substances at the facility, from which there has been a release or threatened release of hazardous substances, for response costs incurred by the United States relating to the Site.

66.     Beazer is a former owner and operator of the Site at the time of disposal of hazardous substances at the Site, from which there has been a release or threatened release of hazardous substances.

67.     Beazer is liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as a person who owned or operated a facility at a time of disposal of hazardous substances at the facility, from which there has been a release or threatened release of hazardous substances, for response costs incurred by the United States relating to the Site.

68.     Cooper is the corporate successor-by-merger to a former owner and operator of the Site at the time of disposal of hazardous substances at the Site, from which there has been a release or threatened release of hazardous substances.

69.     Cooper is liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as a person who owned or operated a facility at a time of disposal of hazardous substances at the facility, from which there has been a release or threatened release of hazardous substances, for response costs incurred by the United States relating to the Site.

70.     Occidental is the corporate successor-by-merger to a person who arranged for the transportation and disposal of hazardous substances at the Site, from which there has been a release or threatened release of hazardous substances.

71.     Occidental is liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), as a person who arranged for the transportation and disposal of hazardous substances at the facility, from which there has been a release or threatened release of hazardous substances, for response costs incurred by the United States relating to the Site.

72.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Defendants are jointly and severally liable to the United States for response costs incurred by the United States relating to the Site, including enforcement costs and interest.

73.     Under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States is entitled to a declaratory judgment on Defendants' liability for the response costs that will be binding on any subsequent claim or action for the recovery of further response costs.

**SECOND CLAIM FOR RELIEF**

Injunctive Relief under Section 106(a) of CERCLA

74.      Paragraphs 1 through 73 are re-alleged and incorporated herein by reference.

75.     EPA has determined that the actual and threatened releases of hazardous substances at or from the Site may constitute an imminent and substantial endangerment to public health or welfare or the environment.

76.     Implementation of the response actions selected in the ROD is necessary to abate the danger to public health or welfare and the environment posed by the actual and threatened releases of hazardous substances at or from the Site.

77.     Defendants are liable for the performances of the response actions selected in the ROD under Sections 106(a) and 107(a) of CERCLA, 42 U.S.C. §§ 9606(a) and 9607(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff the United States respectfully requests that this Court:

a.  Enter judgment in favor of the United States under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), holding Defendants jointly and severally liable for unreimbursed response costs incurred by the United States relating to the Site, including enforcement costs and interest;

b.  Enter a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), on Defendants' joint and several liability that will be binding in any subsequent action for recovery of future response costs relating to the Site, including enforcement costs and interest;

c.  Enter an order under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), requiring Defendants to perform the remedial design and remedial action selected in the ROD;

d.  Award the United States its costs and fees in this action; and

e.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

ELLEN M. MAHAN
Deputy Section Chief
U.S. Department of Justice
Environment and Natural Resources Division

16

Environmental Enforcement Section
Washington, D.C. 20530

3/15/2019

JEROME W. MACLAUGHLIN
Senior Counsel
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, DC 20044-7611
(202) 616-7162
jerry.maclaughlin@usdoj.gov

CRAIG CARPENITO
United States Attorney
District of New Jersey

ALLAN B. K. URGENT
Assistant United States Attorney
District of New Jersey
United States Attorney's Office
970 Broad Street, 7th Floor
Newark, NJ 07102
(973) 297-2079

OF COUNSEL

KRISTA E. YACOVONE
Office of Regional Counsel
U.S. Environmental Protection Agency, Region II
290 Broadway, 17th Floor
New York, NY 10007-1855
(212) 637-3095

## CERTIFICATION UNDER LOCAL CIVIL RULE 11.2

In accordance with 28 U.S.C. § 1746, I certify, under penalty of perjury, that the matter in controversy in the foregoing Complaint is not the subject of any other action pending in any court, or any pending arbitration or administrative proceeding.

3/15/19

JEROME W. MACLAUGHLIN
Senior Counsel
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, DC 20044-7611
(202) 616-7162
jerry.maclaughlin@usdoj.gov

18

JS 44   (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
Apogent Transition Corp., Beazer East, Inc., Cooper Industries, LLC, Occidental Chemical Corp.

**(b)** County of Residence of First Listed Plaintiff   n/a
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   State of Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jerome W. MacLaughlin, U.S. Dept. of Justice, P.O. Box 7611, Washington, D.C.  20044-7611.  202-616-7162

Attorneys *(If Known)*
Apogent: J.Forrest Jones 973-639-7995; Beazer: Todd Kantorczyk 484-430-2359; Cooper: Gary Gengel 973-639-1234; Occidental: Larry Silver 215-239-9023

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [X] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [X] 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Secs. 9606(a) and 9607(a)
Brief description of cause:
Liability under CERCLA to perform cleanup at site and reimburse United States' costs

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE  n/a          DOCKET NUMBER  n/a

DATE  3/15/2019          SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE